985 F.2d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kenneth Lee KRAUSE, Plaintiff-Appellant,
v.
Harol L. WHITLEY, et al., Defendants-Appellees.
 No. 91-16718.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1992.
Decided Feb. 2, 1993.
 
 Appeal from the United States District Court for the District of Nevada; No. CV-N-87-527-ECR, Edward C. Reed, District Judge, Presiding.
 D.Nev. [APPEAL AFTER REMAND FROM 878 F.2d 386.]
 AFFIRMED.
 Before WALLACE, Chief Judge, and SKOPIL and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kenneth L. Krause (Krause) appeals the district court's granting of defendants' motion for summary judgment in this action under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs. The essence of Krause's claim is that medical personnel at the Nevada State Prison (NSP) failed to diagnose or failed to refer him to a physician who could diagnose his brain aneurysm for approximately two-and-one-half years. The aneurysm was eventually discovered and Krause underwent surgery which successfully treated it.
 
 DISCUSSION
 
 3
 This case is before the court for a second time. In an unpublished memorandum disposition, this court reversed the district court's granting of defendants' motion for summary judgment because, at the time that motion was granted, Krause's request for production of his medical records, which he believed necessary to rebut defendants' arguments, remained outstanding. See Krause v. Whitley, 878 F.2d 386 (9th Cir.1989) (Table).
 
 
 4
 After remand, Krause received his medical records. The defendants again moved for summary judgment. Defendants' motion was granted and this appeal ensued. In it, Krause contends the district court erred in denying his motions for appointment of counsel and for appointment of an expert witness, (see C.R. 56), and in granting defendants' second motion for summary judgment. (See C.R. 99 and 103).
 
 
 5
 In his opening brief, Krause also argues that the district court erred in: (1) not allowing him a sufficient opportunity to develop discovery before ruling on defendants' second motion for summary judgment; (2) denying his motion to compel answers to interrogatories; (3) denying his motion to compel service on an additional defendant, Dr. Larry Gay; (4) denying his motion to disqualify United States District Judge Edward C. Reed; and (5) denying his motion to substitute the wife of deceased defendant Dr. Richard Browning. We have considered these additional arguments, and find them without merit.
 
 APPOINTMENT OF COUNSEL
 
 6
 The district court denied Krause's motion for appointment of counsel on the ground that this case was not complex and, therefore, Krause's incarceration did not render him incapable of effectively litigating his claim, especially since Krause had access to inmate law clerks and/or the prison law library. (C.R. 56 at 5). In so holding, the court noted that Krause had filed numerous motions, submitted document requests, and negotiated an appeal before this court. (Id.)
 
 
 7
 Krause argues that the district court overestimated his ability to understand and articulate the complex legal and factual issues involved in his claim. As an inmate, Krause lacked access to outside informational sources such as physicians. While Krause prepared motions, those motions were "conclusory" and lacked a "sufficient factual basis." (Appellant's Supp.Br. at 14). Due to Krause's lack of knowledge of the discovery process, the record remained "undeveloped" and did not aid the court in evaluating the merits of his claim. (Id. at 20). In addition, counsel could have assisted Krause in "framing the issues" and distinguishing between and identifying the standards applied to his claim. (Id. at 7).
 
 
 8
 Krause also contends he had a likelihood of success on the merits because the record "raise[s] serious doubts regarding whether the medical mismanagement [of his illness] was done intentionally." (Id. at 13). Specifically, NSP medical staff: (1) failed to diagnose his brain aneurysm for two-and-one-half years; (2) were not capable of diagnosing his condition; (3) did not rule out a neurological basis for Krause's condition; (4) provided "cursory" treatment.
 
 
 9
 Title 28 U.S.C. § 1915(d) provides that a district court may designate counsel to represent an indigent defendant. However, this circuit has made it clear that counsel should be designated only in exceptional circumstances. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986). A finding of exceptional circumstances requires an evaluation of (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims in light of their complexity. Id.
 
 
 10
 The record does not support Krause's contention that he lacked the ability to articulate his claims, nor that the issues involved are complex. Krause filed his motion for appointment of counsel almost two years after commencing this action. Prior to that time, Krause amended his complaint, employed such discovery techniques as interrogatories, requests for production and admissions, and negotiated an appeal before this court. Despite Krause's arguments to the contrary, "the need for further factual discovery is not, by itself, sufficient to establish the complexity of the legal issues." Wilborn, 789 F.2d at 1331 n. 5[1]. See Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir.1990) (denial of counsel appropriate where difficulties plaintiff claimed indicated exceptional circumstances are difficulties which any litigant would have in proceeding pro se ). While the district court did not make any specific findings as to whether Krause had a likelihood of success on the merits, (see C.R. 56 at 5), as discussed below, we find that he did not. As such, the district court did not abuse its discretion in denying Krause's motion for appointment of counsel.
 
 APPOINTMENT OF EXPERT WITNESS
 
 11
 Krause also argues that the district court abused its discretion by failing to appoint an expert witness under Federal Rule of Evidence (FRE) 706. The district court denied Krause's motion on the ground that no issues requiring expert testimony--such as medical malpractice--were involved in this action. (C.R. 56 at 5).
 
 
 12
 FRE 706 allows the district court to appoint a neutral expert on its own motion, whether or not the expert is agreed upon by the parties. Appointments under FRE 706 are reviewed for abuse of discretion. Students of Cal. School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir.1984), vacated on other grounds, 471 U.S. 148 (1985).
 
 
 13
 The government contends that Krause's motion was properly denied because Krause sought the appointment of an expert witness to aid him, not the court. While Krause stated he needed an expert to "substantiate his claims" by receiving needed evidence and inspecting and interpreting his medical records, (C.R. 31 at 3; C.R. 55 at 2), he also stated that an expert "could and would aid this court in determining what the plaintiff suffered medically, and the disability that the plaintiff has suffered." (C.R. 55 at 2).
 
 
 14
 Krause argues that the district court abused its discretion in denying his motion to appoint an expert witness because, due to the complexity of the factual issues and the undeveloped state of the record, the district court was "not capable of making an unaided determination that the evidence offered does not present a genuine issue of material fact." (Appellant's Supp.Br. at 8). We disagree. Krause's position is premised upon his misapplication of a negligence standard to his claim for deliberate indifference. The question in this case was whether or not there was deliberate indifference to Krause's condition, not whether defendants were guilty of medical malpractice. The issue of deliberate indifference to the serious medical needs of a prisoner is not so complicated and difficult that an expert is required to present or prove the case. The district court did not abuse its discretion in denying Krause's motion for appointment of an expert.
 
 SUMMARY JUDGMENT
 
 15
 A grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv. v. Pacific Elec. Contractors, 809 F.2d 626, 629 (9th Cir.1987).
 
 
 16
 Krause argues that the district court erred in applying the standard of deliberate indifference and, based upon that misapplication, in failing to inquire into the quality of medical treatment he received. Rather, the district court found the fact he had received some medical attention dispositive. Specifically, Krause argues that he never received proper medical testing in the form of a neurological examination. Instead, he was repeatedly treated with headache medication and referred to an optometrist for corrective lenses. According to Krause: "[a]ny reasonable person of the medical field would have known that [he] was suffering from some sort of neurological problem." (C.R. 82 at 3). Had defendants diagnosed him earlier, his condition would not have become as serious. Krause argues that the record allows for inference of negligent medical treatment which, when viewed as a "long pattern," supports a finding of deliberate indifference. See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980) (deliberate indifference may be shown by repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff), cert. denied, 450 U.S. 1041 (1981).
 
 
 17
 At most, Krause alleges negligence, which is insufficient to support a claim under the Eighth Amendment. As we stated earlier, the essence of Krause's claim is that NSP medical personnel failed to perform a neurological examination or to refer him to a physician qualified to perform such an exam. Krause's arguments reveal, at best, a difference in judgment between himself and medical personnel which does not constitute cruel and unusual punishment. See Franklin v. State of Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir.1981).
 
 
 18
 Moreover, the record does not support a finding of deliberate indifference nor a pattern of negligent conduct. Each time Krause requested medical attention, he received it. Initially, Krause complained only of headaches and double vision. Krause concedes that, in response to his complaints, NSP medical personnel prescribed Motrin for his headaches, referred him to an optometrist, and, at Krause's request, performed a limited x-ray series of Krause's skull. (C.R. 28 at 3b, Para. 5). When Krause again complained of double vision, he was seen by an optometrist. (Id.) When Krause complained that the Motrin was no longer effective, NSP medical personnel prescribed a different medication in an effort to stop the headaches. (Id.) Krause complains that, confronted with continued complaints of double vision, NSP medical personnel merely provided him with corrective lenses like those worn by his cellmate. However, the lenses were prescribed at Krause's request because he stated they "help[ed] at times." (Id.) Finally, prior to being hospitalized with hepatitis, Krause had complained only of double vision and headaches. While hospitalized, Krause's left eye "began to loose (sic) sight and became blury (sic)" resulting in the eye becoming frozen and causing double vision and cross-eyedness. (Id. at 3). Once this situation emerged, a CT Scan was performed. (Id.)[2]
 
 CONCLUSION
 
 19
 We AFFIRM the district court's denial of Krause's motions to appoint counsel and to appoint an expert witness, and its granting of defendants' second motion for summary judgment.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 As the court noted in Wilborn:
 Most actions require development of further facts during litigation and a pro se litigant will seldom be in a position to investigate easily the facts necessary to support the case. If all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex legal issues.
 789 F.2d at 1331 (footnote omitted).
 
 
 [2]
 In its Order of October 9, 1991, the district court states that Krause "does not contest Defendants claim that 'once diagnosed,' prompt medical treatment was provided." (C.R. 103 at 5). Actually, Krause's amended complaint does contain allegations that once his aneurysm was diagnosed, prison officials delayed unreasonably in providing him with medical treatment for his eye, (C.R. 28 at 3a, Para. 2), and in giving him the needed surgery. (C.R. 11 at 2). However, in his February 8, 1988 affidavit, Krause admits that the time from diagnosis to surgery was "about two full months." (C.R. 11, Krause Aff. at 2, Para. 6). This delay is not unreasonable given Krause's prisoner status and the complicated nature of the surgery. (See C.R. 103 at 4)